**Matthew S. Parmet** (CSB # 296742)
matt@parmet.law
**PARMET PC**
340 S. Lemon Ave., #1228
Walnut, CA 91789
phone 310 928 1277

**Attorneys for Plaintiffs**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| MOISES MADRIZ and RODNEY ULLOA, individually and on behalf of all others similarly situated, <br><br> **Plaintiffs,** <br><br> vs. <br><br> PEPSICO, INC.; NAKED JUICE CO.; NAKED JUICE CO. OF GLENDORA, INC.; TROPICANA PRODUCTS, INC.; TROPICANA SERVICES, INC.; and DOES #1 through #50, inclusive, <br><br> **Defendants.** | Case No. 5:22-cv-00549 <br><br> **Plaintiffs' Original Class and Collective Action Complaint for Damages** <br><br> 1. Failure to pay overtime compensation (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*) <br> 2. Failure to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders) <br> 3. Violations of record keeping requirements (CAL. LAB. CODE § 226) <br> 4. Waiting time penalties (CAL. LAB. CODE § 203) <br> 5. Violation of Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*) <br> 6. Civil penalties under the Private Attorneys General Act of 2004 (CAL. LAB. CODE §§ 2698, *et seq.*) |

## SUMMARY

1.     Like many other companies across the United States, Defendants' timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.     That hack led to problems in timekeeping and payroll throughout Defendants' organizations.

3.      As a result, Defendants' workers who were not exempt from the overtime requirements under federal and state law, were not paid for all overtime hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4.      Moises Madriz and Rodney Ulloa are each such workers for Defendants.

5.      Defendants could have easily implemented a system to accurately record time and properly pay hourly and non-exempt employees until issues related to the hack were resolved.

6.      But they didn't. Instead, Defendants did not pay their non-exempt hourly and salaried employees their full overtime premium for all overtime hours worked, as required by federal and California law.

7.      Defendants pushed the cost of the Kronos hack onto the most economically vulnerable people in their workforce.

8.      Defendants made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely paymet of their wages to make ends meet.

9.      Defendants' failure to pay proper wages for all hours worked, including overtime hours, violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.* and applicable state law.

10.     Madriz and Ulloa bring this lawsuit to recover these unpaid wages and other damages owed by Defendants to him and Defendants' similar workers, who were the ultimate victims of not just the Kronos hack, but Defendants' decision to make their own workforce bear the economic burden for the hack.

**JURISDICTION & VENUE**

11.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

12.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

PARMET PC

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events at issue occurred in this District.

14.     Madriz and Ulloa worked for Defendants in this District.

**PARTIES**

15.     **Plaintiff Moises Madriz** is a natural person.

16.     Madriz was, at all relevant times, an employee of Defendants.

17.     Madriz began working for Defendants in October 2020.

18.     Madriz's written consent is attached as Exhibit 1.

19.     **Plaintiff Rodney Ulloa** is a natural person.

20.     Ulloa was, at all relevant times, an employee of Defendants.

21.     Ulloa began working for Defendants in February 2017.

22.     Ulloa's written consent is attached as Exhibit 2.

23.     Madriz and Ulloa represent several groups of similarly situated Defendants workers.

24.     Madriz represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "Naked Juice FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of Naked Juice who were non-exempt under the FLSA and who worked for Naked Juice in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

25.     Ulloa represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "Tropicana FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of Tropicana who were non-exempt under the FLSA and who worked for Tropicana in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

26.     Madriz and Ulloa represent a class of similarly situated employees under California law pursuant to Federal Rule of Civil Procedure 23. This "California Class" is defined as:

**All current or former hourly and salaried employees of PepsiCo, Inc., including its subsidiaries and alter egos such as Naked Juice and Tropicana, who were non-exempt under California law and who worked for Defendants in California at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

27.     Together, throughout this Complaint, the Naked Juice and Tropicana FLSA Collective members and California Class members are referred to as the "Similarly Situated Workers."

28.     **Defendant PepsiCo, Inc. ("PepsiCo")** is an foreign corporation.

29.     PepsiCo does business in a systematic and continuous manner throughout California and this District.

30.     PepsiCo may be served by service upon its registered agent, **CT Corporation System, 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203**, or by any other method allowed by law.

31.     **Defendant Naked Juice Co.** is an foreign corporation.

32.     Naked Juice Co. does business in a systematic and continuous manner throughout California and this District.

33.     Naked Juice Co. may be served by service upon its registered agent, **CT Corporation System, 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203**, or by any other method allowed by law.

34.     **Defendant Naked Juice Co. of Glendora, Inc.** is an foreign corporation.

35.     Naked Juice Co. of Glendora, Inc. does business in a systematic and continuous manner throughout California and this District.

36.     Naked Juice Co. of Glendora, Inc. may be served by service upon its registered agent, **CT Corporation System, 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203**, or by any other method allowed by law.

37.     Together, throughout this Complaint, Naked Juice Co. and Naked Juice Co. of Glendora, Inc. are referred to jointly as "Naked Juice."

38.     **Defendant Tropicana Products, Inc.** is an foreign corporation.

39.     Tropicana Products, Inc. does business in a systematic and continuous manner throughout California and this District.

40.     Tropicana Products, Inc. may be served by service upon its registered agent, **CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324**, or by any other method allowed by law.

41.     **Defendant Tropicana Services, Inc.** is an foreign corporation.

42.     Tropicana Services, Inc. does business in a systematic and continuous manner throughout California and this District.

43.     Tropicana Services, Inc. may be served by service upon its registered agent, **CT Corporation System, 330 N. Brand Blvd., Ste. 700, Glendale, CA 91203**, or by any other method allowed by law.

44.     Together, throughout this Complaint, Tropicana Products, Inc. and Tropicana Services, Inc. are referred to jointly as "Tropicana."

45.     At all relevant times, PepsiCo exerted operational control over its subsidiaries and alter egos.

46.     At all relevant times, PepsiCo substantially controlled the terms and conditions of employment for workers of its subsidiaries and alter egos.

47.     At all relevant times, PepsiCo had a common control and management of labor relations regarding employees of its subsidiaries and alter egos.

48.     PepsiCo employed and/or jointly employed, with its subsidiaries and alter egos, Madriz and the Similarly Situated Workers.

49.     PepsiCo and its respective subsidiaries and alter egos, like Naked Juice and Tropicana, are joint employers for purposes of the FLSA. See 29 C.F.R. § 791.2.

50.     PepsiCo and its respective subsidiaries and alter egos, like Naked Juice and Tropicana, are joint employers for purposes of the California law.

51.     Madriz and Ulloa are informed and believe and on that basis allege, that at all relevant times Defendants and Defendants Does #1 through #50 were affiliated, and each was the principal, agent, servant, partner, officer, director, controlling shareholder, subsidiary,

PARMET PC

affiliate, parent corporation, successor or predecessor in interest, joint ventures, and/or joint enterprises of one or more of Defendants.

52.    Defendants and Defendants Does #1 through #50 employed and/or jointly employed Madriz, Ulloa, and the Similarly Situated Workers.

53.    Defendants and Defendants Does #1 through #50 are joint employers for purposes of the FLSA. *See* 29 C.F.R. § 791.2.

54.    Defendants and Defendants Does #1 through #50 are joint employers for purposes of California law.

55.    Madriz and Ulloa are unaware of the true names of Defendants Does #1 through #50, and so Madriz and Ulloa sue those Defendants under said fictitious names pursuant to California Code of Civil Procedure section 474. *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 802 (9th Cir. 1986).

56.    Madriz and Ulloa will amend this Complaint to show the true names and capacities of such fictitiously named Defendants after the same has been ascertained.

57.    Because the true names of Defendants Does #1 through #50 are currently unknown to him, Madriz and Ulloa refer to such Defendants in this lawsuit collectively with their non-fictitiously named joint employers as "PepsiCo," "Naked Juice," "Tropicana," and/or "Defendants" throughout this Complaint.

## COVERAGE UNDER THE FLSA

58.    At all relevant times, PepsiCo and Naked Juice were employers of Madriz within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

59.    At all relevant times, PepsiCo and Naked Juice were employers of the Naked Juice FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

60.    At all relevant times, PepsiCo and Tropicana were employers of Madriz within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

PARMET PC

61.     At all relevant times, PepsiCo and Tropicana were employers of the Tropicana FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

62.     At all relevant times, Defendants were part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

63.     During at least the last three years, Defendants have each had gross annual sales in excess of $500,000.

64.     During at least the last three years, Defendants were and are part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

65.     PepsiCo and Naked Juice employ many workers, including Madriz, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

66.     PepsiCo and Tropicana employ many workers, including Ulloa, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

67.     The goods and materials handled, sold, or otherwise worked on by Madriz, Ulloa, and other employees of Defendants and that have been moved in interstate commerce include, but are not limited to, foods and beverages, computers, peripherals, and electronic equipment.

## FACTS

68.     Defendants are a food, snack, and beverage corporation.

69.     Many of Defendants' employees are non-exempt hourly and salaried workers.

70.     Since at least 2021, Defendants have used timekeeping software and hardware operated and maintained by Kronos.

71.     On or about December 11, 2021, Kronos was hacked with ransomware.

72.    The Kronos hack interfered with the ability of its customers, including Defendants, to use Kronos's software and hardware to track hours and pay employees.

73.    Since the onset of the Kronos hack, Defendants have not kept accurate track of the hours that Madriz and Similarly Situated Workers have worked.

74.    Instead, Defendants have used various methods to estimate the number of hours Madriz, Ulloa, and Similarly Situated Workers work in each pay period.

75.    For example, Defendants issued paychecks based on their scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

76.    This means that employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

77.    Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

78.    Madriz and Ulloa are each such employees.

79.    Instead of paying Madriz and Ulloa for the hours they actually worked (including overtime hours), Defendants simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** their actual hours worked and regular pay rates.

80.    In some instances, Madriz and Ulloa was paid portions of overtime hours worked, but were not paid at the proper overtime premium of at least 1.5x or 2x the regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

81.    In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

82.    Defendants know they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

83.     Defendants know this because, prior to the Kronos hack, they routinely paid these workers for all overtime hours at the proper overtime rates.

84.     Defendants could have instituted any number of methods to accurately track and timely pay their employees for all hours worked.

85.     Instead of accurately tracking hours and paying employees their wages and overtime, Defendants decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

86.     Even if they did pay any overtime to affected employees, Defendants did not take into account shift differentials and non-discretionary bonuses, such that the overtime premium Defendants did pay, if any, was not the full overtime premium owed under the law based on the employees' regular rate.

87.     It was feasible for Defendants to have their employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

88.     But they didn't do that.

89.     In other words, Defendants pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that Defendants kept the money they owed to those employees in their own pockets, rather than take steps to make sure employees were paid on time and in full for the work they did.

90.     Madriz and Ulloa are two of the front-line employees who had to shoulder the burden of this decision by Defendants.

91.     Madriz was a non-exempt hourly employee of PepsiCo and Naked Juice.

92.     Madriz regularly worked over 40 hours per week for PepsiCo and Naked Juice.

93.     Madriz's normal, pre-Kronos hack hours are reflected in PepsiCo and Naked Juice's records.

94.     Since the Kronos hack, PepsiCo and Naked Juice have not paid Madriz for his actual hours worked each week.

PARMET PC

95.     Since the hack took place, PepsiCo and Naked Juice have not been accurately recording the hours worked by Madriz and their other workers.

96.     Even though PepsiCo and Naked Juice may have had Madriz record and submit his hours, Defendants have not issued payment for all hours they have worked.

97.     Even when Defendants have issued payment to PepsiCo and Naked Juice for any overtime, the overtime is not calculated based on Madriz's regular rates, as required by federal and California law.

98.     Ulloa was a non-exempt hourly employee of PepsiCo and Tropicana.

99.     Ulloa regularly worked over 40 hours per week for PepsiCo and Tropicana.

100.    Ulloa's normal, pre-Kronos hack hours are reflected in PepsiCo and Tropicana's records.

101.    Since the Kronos hack, PepsiCo and Tropicana have not paid Ulloa for his actual hours worked each week.

102.    Since the hack took place, PepsiCo and Tropicana have not been accurately recording the hours worked by Ulloa and their other workers.

103.    Even though Defendants may have had Ulloa record and submit his hours, PepsiCo and Tropicana have not issued payment for all hours they have worked.

104.    Even when PepsiCo and Tropicana have issued payment to Ulloa for any overtime, the overtime is not calculated based on Ulloa's regular rates, as required by federal and California law.

105.    Defendants were aware of the overtime requirements of the FLSA and California law.

106.    Defendants nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Madriz and Ulloa.

107.    Defendants' failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA and California law.

108.    The full overtime wages owed to Madriz, Ulloa, and the Similarly Situated Workers became "unpaid" when the work for Defendants was done—that is, on Madriz,

PARMET PC

Ulloa, and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

109.    At the time Defendants failed to pay Madriz, Ulloa, and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Defendants became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under federal and California law.

110.    In other words, there is no distinction between late payment and nonpayment of wages under federal or California law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

111.    Even if Defendants made any untimely payment of unpaid wages due and owing to Madriz, Ulloa, or the Similarly Situated Workers, any alleged payment was not supervised by the U.S. Department of Labor or any court.

112.    The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

113.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Defendants' acts and omissions resulting in the unpaid wages in the first place.

114.    Madriz, Ulloa, and the Similarly Situated Workers remain uncompensated for the wages and other damages owed by Defendants under federal and California law.

## COLLECTIVE ACTION ALLEGATIONS

115.    Madriz and Ulloa incorporate all other allegations.

116.    Numerous individuals were victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

PARMET PC

117.    Based on his experiences and tenure with Defendants, Madriz and Ulloa are aware that Defendants' illegal practices were imposed on the Naked Juice and Tropicana FLSA Collectives.

118.    The Naked Juice and Tropicana FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

119.    These employees are victims of Defendants' unlawful compensation practices and are similarly situated to Madriz and/or Ulloa in terms of the pay provisions and employment practices at issue in this lawsuit.

120.    The workers in the Naked Juice and Tropicana FLSA Collectives were similarly situated within the meaning of the FLSA.

121.    Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

122.    Defendants' failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the Naked Juice and/or Tropicana FLSA Collective members.

123.    The Naked Juice and Tropicana FLSA Collectives should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

CLASS ACTION ALLEGATIONS

124.    Madriz and Ulloa incorporates all other allegations.

125.    The illegal practices Defendants imposed on Madriz and Ulloa were likewise imposed on the California Class Members.

126.    Numerous other individuals who worked for Defendants were not properly compensated for all hours worked, as required by California law.

127.    The California Class is so numerous that joinder of all members of the class is impracticable.

128.    Defendants imposed uniform practices and policies on Madriz, Ulloa, and the California Class members regardless of any individualized factors.

129.    Based on their experience and tenure with Defendants, as well as coverage of the Kronos hack, Madriz and Ulloa are aware that Defendants' illegal practices were imposed on the California Class members.

130.    California Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

131.    Defendants' failure to pay wages and overtime compensation in accordance with California law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the California Class Members.

132.    Madriz and Ulloa's experiences are therefore typical of the experiences of the California Class members.

133.    Madriz and Ulloa do not have any interest contrary to, or in conflict with, the members of the California Class. Like each member of the proposed class, Madriz and Ulloa have an interest in obtaining the unpaid overtime wages and other damages owed under the law.

134.    A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

135.    Absent this action, many California Class members likely will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating California law.

136.    Furthermore, even if some of the California Class members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

137.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

138.    The questions of law and fact common to each of the California Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.    Whether the California Overtime Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

b.    Whether the California Overtime Class Members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 8 or 12 in a single day; and

c.    Whether Defendants' failure to pay overtime at the rates required by law violated California law.

139.    Madriz and Ulloa's claims are typical of the California Class members. Madriz, Ulloa, and the California Class members have all sustained damages arising out of Defendants' illegal and uniform employment policies.

140.    Neither Madriz nor Ulloa know of any difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

141.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class action treatment.

**FIRST CAUSE OF ACTION—VIOLATION OF THE FLSA**

142.    Madriz and Ulloa incorporate each other allegation.

143.    By failing to pay Madriz, Ulloa, and the Naked Juice and Tropicana FLSA Collective members overtime at 1.5 times their regular rates, Defendants violated the FLSA. 29 U.S.C. § 207(a).

144.    Defendants owe Madriz, Ulloa, and the Naked Juice and Tropicana FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

145.    Defendant owes Madriz, Ulloa, and the Naked Juice and Tropicana FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

146.   Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the Naked Juice and Tropicana FLSA Collective members overtime compensation.

147.   Because Defendants knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Defendants owe these wages for at least the past three years.

148.   Defendants' failure to pay overtime compensation to these Naked Juice and Tropicana FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

149.   Because Defendants' decision not to pay overtime was not made in good faith, Defendants also owe Madriz, Ulloa, and the Naked Juice and Tropicana FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

150.   Accordingly, Madriz, Ulloa, and the Naked Juice and Tropicana FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—FAILURE TO PAY WAGES UNDER CALIFORNIA LAW

151.   Madriz and Ulloa incorporate each other allegation.

152.   The California Labor Code requires that all employees, including Madriz, Ulloa, and the California Class, receive 1.5x their hourly rate as overtime premium compensation for hours worked over eight in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

153.   Despite working over 8 hours a day as part of their normal and regular shift, Madriz, Ulloa, and the California Class did not receive proper overtime compensation for all hours worked over 8 in one day.

154.   The California Labor Code also requires that all employees, including Madriz and the California Class, receive 2x times the overtime premium compensation for hours worked over 12 in one day. CAL. LAB. CODE § 510 (2017); IWC Wage Orders #1-2001 through #17-2001.

155.   Although Madriz, Ulloa, and the California Class occasionally worked over 12 hours in one day, they did not receive the "double time" compensation required by California law.

156.   The California Labor Code requires that all employees, including Madriz, Ulloa, and the California Class, receive 2x the overtime premium compensation for hours worked over 8 in one day, in the seventh day of a workweek. CAL. LAB. CODE §§ 510, 551–52 (2017); IWC Wage Orders #1-2001 through #17-2001.

157.   Although Madriz, Ulloa, and the California Class regularly worked seven days a week, for at least 12 hours a day, they did not receive the "double time" compensation required by California law for all hours over eight worked on the seventh day.

158.   This pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation is unlawful and entitles Madriz, Ulloa, and the California Class to recover unpaid balance of the full amount of overtime wages owing, including liquidated damages, interest, attorneys' fees, and costs of suit pursuant to California Labor Code section 1194.

### THIRD CAUSE OF ACTION—VIOLATIONS OF RECORD KEEPING REQUIREMENTS

159.   Madriz and Ulloa incorporate each other allegation.

160.   California Labor Code section 226 requires Defendants to keep accurate records regarding the rates of pay for their California employees and provide that information to Madriz and the California Class with their wage payment.

161.   Because Defendants failed to pay Madriz, Ulloa, and the California Class lawful wages, it did not maintain accurate records of Madriz, Ulloa, and the California Class's daily hours, gross wages earned, net wages earned, and the applicable hourly rates, and did not provide that information to Madriz and the California Class with their wages.

162.   This pattern, practice, and uniform administration of corporate policy is unlawful and entitles Madriz, Ulloa, and the California Class to recover all damages and penalties available by law, including interest, penalties, attorney fees, and costs of suit. CAL. LAB. CODE § 226(e).

**FOURTH CAUSE OF ACTION—WAITING TIME PENALTIES**

163.   Madriz and Ulloa incorporate each other allegation.

164.   At all relevant times, Defendants were required to pay Madriz, Ulloa, and the California Class all wages owed in a timely fashion at the end of employment pursuant to California Labor Code sections 201 to 204.

165.   As a result of Defendants' alleged California Labor Code violations, Defendants regularly failed to pay Madriz, Ulloa, and the California Class their final wages pursuant to California Labor Code sections 201 to 204, and accordingly Defendants owes waiting time penalties pursuant to California Labor Code section 203.

166.   The conduct of Defendants, in violation of Madriz, Ulloa, and the California Class members' rights, was willful and was undertaken by the agents, employees, and managers of Defendants.

167.   Defendants' willful failure to provide Madriz, Ulloa, and the California Class the wages due and owing them upon separation from employment results in a continuation of wages up to 30 days from the time the wages were due.

168.   Therefore, Madriz, Ulloa, and the California Class members who have separated from employment are entitled to compensation pursuant to California Labor Code section 203.

**FIFTH CAUSE OF ACTION—VIOLATION OF UNFAIR COMPETITION LAW**

169.   Madriz and Ulloa incorporate each other allegation.

170.   Defendants have engaged, and continues to engage, in unfair and unlawful business practices in California by practicing, employing, and utilizing the employment practices outlined above by knowingly denying employees: (1) overtime wages required under federal law; (2) overtime wages required by California law; (3) accurate wage statements; and (4) waiting time penalties.

171.   As a result of Defendants' failure to comply with federal and state law, Defendants have also violated the California Unfair Competition Law ("UCL"), CAL. BUS.

& PROF. CODE § 17200, *et. seq.*, which prohibits unfair competition by prohibiting any unlawful or unfair business actions or practices.

172. The relevant acts by Defendants occurred within the four years preceding the filing of this action.

173. On information and belief, Defendant have engaged in unlawful, deceptive, and unfair business practices, pursuant to California's Business and Professions Code section 17200, *et seq.*, including those set forth above, depriving Madriz and the California Class of minimum working condition standards and conditions under California law and IWC Wage Orders as set forth above.

174. Madriz and the California Class are entitled to restitution for at least the following: restitution for unpaid overtime wages and unpaid California Labor Code § 203 continuation wages.

175. Madriz and the California Class are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

176. Defendants are also liable for fees and costs pursuant to California Code of Civil Procedure section 1021.5 and other applicable law.

**SIXTH CAUSE OF ACTION—CIVIL PENALTIES UNDER PAGA**

177. Madriz and Ulloa incorporate all other allegations.

178. Madriz, Ulloa, and the California Class are aggrieved employees within the meaning of California Labor Code section 2699.

179. As aggrieved employees, Madriz, Ulloa, and the California Class seek to recover of civil penalties against Defendants pursuant to the Private Attorneys General Act of 2004 (PAGA), CAL. LAB. CODE §§ 2698, *et seq.*

180. Defendants has knowingly and intentionally violated the California Labor Code and IWC Wage Orders, including by:

a. Failing to pay wages (CAL. LAB. CODE §§ 510, 1194, 1194.5; IWC Wage Orders #1-2001 through #17-2001);

PARMET PC

b. Failing to provide compensation for missed meal and rest periods (Cal. Lab. Code §§ 226.7, 512; IWC Wage Orders #1-2001 through #17-2001);

c. Violating record keeping requirements (CAL. LAB. CODE § 226);

d. Unlawfully collecting, receiving, or withholding wages (CAL. LAB. CODE §§ 221, 225.5);

e. Failing to pay wages promptly following termination of employment, or when due and payable (CAL. LAB. CODE § 203).

181. The civil penalties sought by Madriz, Ulloa, and the California Class include the recover of amounts specified in the respective sections of the California Labor Code, and if not specifically provided, those penalties under section 2699(f).

182. Madriz, Ulloa, and the California Class seek the full amounts sufficient to recover unpaid wages, other damages, and necessary expenditures or losses incurred by Madriz and the California Class pursuant to California Labor Code sections 210, 225.5, 226.3, 226.8, 558(a), 1197(a), 2802, and 2699.

183. Madriz, Ulloa, and the California Class will allege any additional violations of the California Labor Code and IWC Wage Orders as may be disclosed in discovery and as a result of additional investigation that may be pursued in this action.

184. Madriz and Ulloa provided notice to Defendants of their California Labor Code and IWC Wage Orders violations on March 30, 2022.

185. On the same date, Madriz and Ulloa submitted notice to the California Labor and Workplace Development Agency (LWDA) as required by PAGA.

186. Madrizand Ulloa's notice to Defendants and the LWDA advises each of them of the intent to prosecute a private enforcement action to assess and recover civil penalties under PAGA if the LWDA declines to investigate or prosecute the asserted California Labor Code and IWC Wage Orders violations.

187. If the LWDA declines to investigate or prosecute, Madriz, Ulloa, and the California Class will pursue their PAGA claims in the course of this action.

188. Madriz, Ulloa, and the California Class had to retain counsel to file this action to protect their interests and to assess and collect the civil penalties owed by Defendants.

189.   Madriz, Ulloa, and the California Class have incurred attorneys' fees and costs in prosecuting this action to recover under PAGA.

**RELIEF SOUGHT**

190.   Madriz and Ulloa pray for judgment against Defendants as follows:

   a.   For an order certifying collective actions for the Naked Juice and Tropicana FLSA Collectivees;

   b.   For an order certifying a class action for the California law claims;

   c.   For an order finding Defendants liable for violations of state and federal wage laws with respect to Madriz, Ulloa, and all Naked Juice FLSA Collective, Tropicana FLSA Collective, and California Class members covered by this case;

   d.   For a judgment awarding all unpaid wages, liquidated damages, and penalty damages, to Madriz, Ulloa, and all Naked Juice FLSA Collective, Tropicana FLSA Collective, and California Class members covered by this case;

   e.   For an order awarding restitution to Madriz, Ulloa, and all California Class members covered by this case;

   f.   For a judgment awarding costs of this action to Madriz, Ulloa, and all Naked Juice FLSA Collective, Tropicana FLSA Collective, and California Class members covered by this case;

   g.   For a judgment awarding attorneys' fees to Madriz, Ulloa, and all Naked Juice FLSA Collective, Tropicana FLSA Collective, and California Class members covered by this case;

   h.   For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Madriz, Ulloa, and all Naked Juice FLSA Collective, Tropicana FLSA Collective, and California Class members covered by this case; and

   i.   For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

**PARMET PC**

*/s/ Matthew S. Parmet*
By: _____
   **Matthew S. Parmet**

**Attorneys for Plaintiffs**